STATE OF NORTH CAROLINA, Plaintiff v. GREGORY LAMONT JOHNSON, Defendant

No. COA08-55

(Filed 21 October 2008)

**1. Evidence— prior inconsistent statements—similar evidence without object**

The trial court did not err in a first-degree burglary, first-degree arson, and violation of a domestic violence protective order case by allowing an officer to testify to a statement allegedly made by the victim at an earlier time that defendant stated he was going to kill her which was not consistent with her trial testimony because: (1) the officer testified without objection that she heard defendant say to the victim that he was going to kill

STATE v. JOHNSON

[193 N.C. App. 412 (2008)]

her; and (2) where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.

**2. Burglary and Unlawful Breaking or Entering— first-degree burglary—requested instruction given in substance**

The trial court did not err by failing to give defendant's requested instruct to the jury that in order to convict defendant of first-degree burglary, defendant had to enter the building with the intent to commit arson because, although the trial court did not give defendant's requested instructions verbatim, it gave them in substance since the actual instructions twice stated that defendant had to have the requisite intent to commit a felony, arson, at the time of the breaking and entering.

**3. Criminal Law— instruction—flight**

The trial court did not err or commit plain error in a first-degree burglary, first-degree arson, and violation of a domestic violence protective order case when it instructed the jury that it could consider flight from the crime as evidence of guilt because there was ample evidence that defendant fled and took steps to avoid apprehension.

Appeal by defendant from judgments entered on or about 5 April 2006 by Judge Andy Cromer in Superior Court, Forsyth County. Heard in the Court of Appeals 9 September 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General LaToya B. Powell, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from convictions for first degree burglary, first degree arson, and violation of a domestic violence protective order. The issues before the Court are whether the trial court erred in (1) allowing testimony about a witness' prior inconsistent statement, (2) refusing to give defendant's proposed jury instruction, and (3) giving a jury instruction on flight. For the following reasons, we find no error.

STATE v. JOHNSON

[193 N.C. App. 412 (2008)]

## I. Background

The State's evidence tended to show the following: During the early hours of 15 March 2005, Lisa Stewart ("Ms. Stewart") made two calls to 911 regarding a domestic dispute with her ex-boyfriend, defendant. Ms. Stewart made the first call to 911, stating that defendant had a knife and was pacing on her back porch. Defendant's presence at Ms. Stewart's residence was in violation of a domestic violence protection order which Ms. Stewart had obtained against him. Corporal A.N. Swaim ("Corporal Swaim") with the Winston-Salem Police Department arrived at Ms. Stewart's apartment shortly thereafter, but defendant was not present when she arrived. Ms. Stewart stated that she did not want to press charges for violation of the domestic violence protective order.

Shortly thereafter, Ms. Stewart again contacted 911 regarding defendant, and Corporal Swaim returned to Ms. Stewart's apartment. When Corporal Swaim arrived, defendant was pulling on Ms. Stewart's screen door while holding a knife and yelling "please let me in." Ms. Stewart's door was "rigged" in a way that made it difficult to open. Corporal Swaim repeatedly told defendant to put the knife down and drew her service weapon. Defendant told Officer Swaim, "You're going to have to kill me. I'm not going back to jail[,]" and resumed demanding that Ms. Stewart "[l]et [him] in." Other officers arrived at the scene.

Corporal Swaim and Officer Banville both sprayed defendant with pepper spray, but defendant merely "wiped it off." Defendant became more agitated and continued yelling "let me in," while wielding the knife. Eventually defendant was able to pull the storm door open.

Once inside, defendant pushed Ms. Stewart, slammed the front door shut, and locked it. Officer Swain then heard defendant say, "I'm going to kill you." The officers unsuccessfully attempted to kick in the front door. Approximately a minute and a half to two minutes after defendant entered Ms. Stewart's apartment, Corporal Swaim observed defendant light curtains on fire with a cigarette lighter. The officers were able to gain entrance with a key from Ms. Stewart who had exited her apartment out the back door shortly after defendant had entered the front door.

Officer Swaim then observed defendant running up the stairs with the knife. By this time the apartment was consider-

ably ablaze, and the officers unsuccessfully tried to stop the fire. Officer Swaim went outside and observed defendant who had come out of an upstairs bedroom window and onto the porch roof. Defendant was pacing back and forth saying, "You're going to have to kill me. I'm not going back to jail." Defendant then jumped from the porch roof to an adjacent apartment and crawled into the apartment through a window.

As members of the Winston-Salem Police Department Special Enforcement Team were trying to open the door to the room where defendant was barricaded, defendant brandished a knife through an opening in the door and stated "I'll cut you" and "take one of you out". Eventually defendant told the police he was "coming out[,]" and he was taken into custody.

The fire investigator from the scene testified that there was considerable damage to Ms. Stewart's apartment and that the point of origin of the fire was at the window beside the front door. The fire investigator believed that an accelerant was used because of the extent of the damage, the odor of gasoline, and the fact that he found an open gasoline can near the point of origin of the fire. Furthermore, on 6 July 2004, Ms. Stewart had called the police and reported that defendant had threatened to kill her and to burn her house down.

On or about 25 July 2005, a grand jury indicted defendant for first degree burglary ("burglary"), first degree kidnapping, violation of a domestic violence protective order ("50B violation"), habitual misdemeanor assault, and assault with a deadly weapon. In a separate indictment defendant was also indicted for first degree arson ("arson"). On or about 3 April 2006, a superceding indictment was issued on the charge of arson.

The jury found defendant guilty of burglary, arson, and the 50B violation. Defendant was sentenced to a consolidated term of 117 to 150 months imprisonment for the burglary and arson. Defendant received a consecutive sentence of 150 days for the 50B violation.

On or about 10 April 2007, this Court allowed defendant an appeal through the issuance of a writ of certiorari. Defendant argues the trial court erred in (1) allowing testimony about a witness' prior inconsistent statement, (2) refusing to give defendant's proposed jury instruction, and (3) giving a jury instruction on flight. For the following reasons, we find no error.

## II. Prior Inconsistent Statement

**[1]** Defendant first contends that "the trial court erred in allowing Officer Kearns to testify to a statement allegedly made by Ms. Stewart at an earlier time that was not consistent with her trial testimony . . . ." The specific statement with which defendant contends Officer Kearns should not have been allowed to testify to was Ms. Stewart telling Officer Kearns defendant told her, "I'm going to kill you." Defendant contends this is error because Ms. Stewart testified "she never heard the defendant say at any time that he was going to kill her."

However, Officer Swaim testified without objection that she heard defendant say to Ms. Stewart, "I'm going to kill you." "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) (citations omitted); *see State v. Wilson*, 313 N.C. 516, 532, 330 S.E.2d 450, 461 (1985) ("Where evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence."). This argument is overruled.

## III. Jury Instructions

Defendant's next two arguments allege errors in the trial court's jury instructions.

### A. Intent Required for First Degree Burglary

**[2]** Defendant's first argument as to the jury instructions is that "the trial court erred in refusing to instruct the jury that in order to convict the defendant of first degree burglary the defendant had to enter the building with the intent to commit arson . . . ." Defendant contends that

> the pattern jury instruction did not adequately instruct the jury on when the defendant had to possess the requisite intent to commit a felony . . . [as] the jury would be misled into believing that they had to find the intent element once the State had proven that an arson was committed after entry.

Defendant requested that the jury instructions contain the following language:

The offense of burglary is the breaking and entering with the requisite intent. It is complete when the building is entered or it does not occur. A breaking and an entry without the intent to commit a felony in the building is not converted into burglary by the subsequent commission therein of a felony subsequently conceived.

Here,

> [w]e review jury instructions contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by the instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Hall*, 187 N.C. App. 308, 314, 653 S.E.2d 200, 207 (2007) (citation, semicolon, ellipses, and brackets omitted), *disc. review denied*, 360 N.C. 653, 663 S.E.2d 431 (2008).

The trial court instructed the jury in pertinent part,

> For you to find the defendant guilty of this offense, first degree burglary, the State must prove six things beyond a reasonable doubt. . . . Sixth, that *at the time of the breaking and entering, the defendant intended to commit arson.* . . .

> So if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant broke into and entered an occupied dwelling house, without the owner's consent, during the nighttime, and *at that time intended to commit felonious arson*, it would be your duty to return a verdict of guilty of first degree burglary.

(Emphasis added.)

We conclude that though the trial court did not give defendant's requested instructions verbatim it gave them in substance as the actual instructions twice state that defendant had to have the requisite intent to commit a felony, arson, "at the time of the breaking and entering . . . ." *See, e.g., State v. Herring*, 322 N.C. 733, 742, 370 S.E.2d 363, 369 (1988) (citation omitted) ("Whether the trial court instructs

using the exact language requested by counsel is a matter within its discretion and will not be overturned absent a showing of abuse of discretion."); *State v. Monk,* 291 N.C. 37, 54, 229 S.E.2d 163, 174 (1976) (citation omitted) ("[T]he trial court is not required to give a requested instruction in the exact language of the request."); *State v. West,* 146 N.C. App. 741, 744, 554 S.E.2d 837, 840 (2001) (citation omitted) ("Thus, while Defendant's proposed jury instructions were certainly a correct statement of the law, the trial court's jury instructions were proper as they presented in substance what Defendant had requested."); *State v. Duncan,* 136 N.C. App. 515, 517, 524 S.E.2d 808, 810 (2000) (citation, quotation marks, and brackets omitted) ("The trial court has discretion in selecting the language used in its jury instructions . . . but if a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance."). This argument is overruled.

## B. Flight

[3] Finally, defendant claims "the trial court committed plain error when it instructed the jury that they could consider flight from the crime as evidence of guilt." Defendant contends, "There was no evidence of flight at all." We disagree.

Defendant concedes that no objection to this instruction was made at trial, and thus plain error review should apply. *State v. Smith,* 188 N.C. App. 207, 213, 654 S.E.2d 730, 735, *disc. review denied,* 362 N.C. 479, —— S.E.2d —— (2008) ("When a defendant does not object to instructions, the alleged error is subject to review for plain error only.") However, "[a] prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all." *State v. Johnson,* 320 N.C. 746, 750, 360 S.E.2d 676, 679 (1987) (citation and quotation marks omitted). Where "the challenged instruction was not error, . . . 'plain error' analysis is not required." *Id.* (citation omitted).

A trial court may instruct a jury on a defendant's flight where "there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged." *State v. Levan,* 326 N.C. 155, 164-65, 388 S.E.2d 429, 434 (1990) (citations and quotation marks omitted). "[M]ere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that de-

fendant took steps to avoid apprehension." *State v. Westall,* 116 N.C. App. 534, 549, 449 S.E.2d 24, 33, *disc. review denied,* 338 N.C. 671, 453 S.E.2d 185 (1994).

During the trial, the State presented evidence of several instances when defendant fled from the police and sought to avoid apprehension. When Officer Swaim first arrived at Ms. Stewart's apartment and attempted to stop him from entering, defendant told her, "You're going to have to kill me. I'm not going back to jail[,]" and continued his efforts to enter the apartment. Neither a gun pointed at him nor pepper spray deterred defendant. Once defendant entered Ms. Stewart's apartment, he slammed the metal door shut and deadbolted it. When the police finally entered Ms. Stewart's apartment, defendant ran up the stairs with the knife and out an upstairs window onto the porch roof. While the police were trying to negotiate with defendant, he jumped across the porch roof to another apartment, crawled though a window, and barricaded himself inside. As the police were trying to open the door behind which defendant was barricaded, defendant stuck the knife outside the door, slashing it up and down and saying "I'll cut you" and "take one of you out". Thus, there was ample evidence that defendant fled and took steps to avoid apprehension. *See Westall* at 549, 449 S.E.2d at 33. The admission of these jury instructions was not in error, and this argument is overruled.

## IV. Conclusion

For the foregoing reasons we conclude that defendant failed to properly preserve any contentions as to allegedly prior inconsistent statements and that the trial court properly instructed the jury as to first degree burglary and flight.

NO ERROR.

Judges McGEE and McCULLOUGH concur.